IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


CAROLYN P.,[1]

        Plaintiff,

v.

COMMISSIONER, Social Security
Administration,

        Defendant.

Case No. 6:18-cv-01851-SU

**OPINION
AND ORDER**

SULLIVAN, United States Magistrate Judge:

    Plaintiff Carolyn P. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and last name initial of non-government parties and their immediate family members.

Page 1 – OPINION AND ORDER

XVI of the Social Security Act (the "Act"). (Docket No. 1). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* (Docket No. 4). For the reasons that follow, the Commissioner's final decision is REVERSED and this case is REMANDED.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB in October 2014 and an application for SSI in March 2015. Tr. 13, 217–18, 221–26.[2] She alleged an amended onset date for both applications of October 17, 2014. Tr. 13, 35–36. Her applications were denied initially and upon reconsideration. Tr. 113–20, 133–43. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on August 4, 2017. Tr. 29–112, 161–62. On November 15, 2017, an ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 13–23. The Appeals Council denied plaintiff's request for review on September 21, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Born in 1964, plaintiff was 50 years old on her amended alleged onset date and 53 years old on the date of her hearing. Tr. 37, 113. She obtained a GED, as well as some vocational business college training, and has past relevant work as a bank teller, administrative clerk, general clerk, and home attendant. Tr. 21–22, 37–38, 241–42. She alleged disability based upon arthritis, asthma, acid reflux, high blood pressure, hypertension, neuropathy, osteoporosis, and plantar fasciitis. Tr. 240.

---

[2] "Tr." citations are to the Administrative Record. (Docket No. 16).

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At

step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her amended alleged onset date. Tr. 15. At step

two, the ALJ found that plaintiff had had the following severe impairments: asthma, right shoulder degenerative joint disease with tendon tear, and status post right knee surgery. *Id.*

At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or equaled a listed impairment. Tr. 19. The ALJ found that plaintiff had the RFC to perform light work[3], with the following limitations:

> [She] can occasionally climb ladders, ropes or scaffolds. [She] can occasionally crawl. [She] can occasionally reach overhead with her dominant right arm. [She] can have occasional exposure to vibration, and temperature and humidity extremes. [She] can have frequent, but not continuous, handling and fingering bilaterally. [She] can have only occasional exposure to concentrated levels of dust, fumes, gases, poor ventilation, and the like.

*Id*. Because the ALJ found that plaintiff could perform her past relevant work as a bank teller, administrative clerk, and general clerk, the ALJ did not proceed to the fifth step of the sequential analysis. Tr. 21–22. The ALJ thus found plaintiff was not disabled within the meaning of the Act. Tr. 23.

## ANALYSIS

Plaintiff asserts the ALJ erred by: (1) failing to provide clear and convincing reasons for rejecting her subjective symptom testimony; (2) failing to assign any weight to the lay witness testimony; and (3) omitting supported functional limitations from plaintiff's RFC. The Court addresses each argument in turn.

### I.     Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no

---

[3] The "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-20, *available at* 1983 WL 31251 at *5 (Jan. 1, 1983).

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Social Security Ruling ("SSR") 16-3p clarified that ALJs are not tasked with "examining an individual's character" or propensity for truthfulness, and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, *available at* 2017 WL 5180304 (Oct. 25, 2017). If the ALJ's subjective symptom analysis "is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citation omitted).

The ALJ found that, although plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." Tr. 20. The ALJ then rejected plaintiff's subjective symptom testimony relating to her shoulder pain, knee pain, and asthma. Tr. 20–21.

A.  **Shoulder Pain**

The ALJ rejected plaintiff's reports of shoulder pain relying on (1) her activities of daily living; (2) purported conservative treatment; (3) positive response to medication; and (4) the objective medical evidence.

1.  Activities of Daily Living

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

The ALJ listed plaintiff's ability to complete "laundry, prepare snacks, and feed her pets" in rejecting her testimony. Tr. 20. These minimal domestic activities, however, are not inconsistent with her testimony. For example, although she testified that she "tr[ies] to get a load of laundry in the washing machine" in the morning, she also explained that her partner "carries the laundry into the bedroom" where she "sit[s] on [her] walker and [does] what [she] can to fold it." Tr. 64, 68; *see also* Tr. 873 (reporting that plaintiff "'always has [shoulder] pain' but it will increase if she tries to do things like laundry"). Similarly, while she testified that she "tr[ies] to feed [her] animals in the morning," she qualified her response, testifying that some days she is unable and her partner "has to." Tr. 64. Finally, plaintiff's snack preparation consisted of eating "peanut butter and celery," and she additionally explained, that she is not capable of "extensive cooking." Tr. 65–66. These minimal activities were not clear and convincing reasons to reject plaintiff's subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from

her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))

Moreover, the ALJ's mere recitation of plaintiff's activities was insufficient to support rejection of the plaintiff's testimony as a matter of law. Though the Ninth Circuit has permitted the rejection of a claimant's testimony based on household activities where an ALJ highlights *specific* conflicts, *see, e.g., Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (affirming credibility determination where the ALJ specifically highlighted conflicts between the claimant's activities of "cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week" and claims of "*totally disabling pain*") (emphasis added), the ALJ's decision here lacks the requisite specificity required. *See Burrell v. Colvin,* 775 F.3d 1133, 1138 (9th Cir. 2014) (reversing credibility determination where "the ALJ did not elaborate on *which* daily activities conflicted with *which* part of [the claimant's] testimony") (emphasis in original). An ALJ errs where he fails "to explain in any detail how the activities described contradicted any specific allegations[.]" *Smith v. Berryhill,* No. 1:17-cv-00348-AC, 2018 WL 2432937, at *4 (D. Or. May 29, 2018). As such, plaintiff's activities of daily living were not a clear and convincing reason to reject her reports of shoulder pain.

2. Conservative Treatment

An ALJ may discount testimony where a claimant responds "favorably to conservative treatment including physical therapy[.]" *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Here, the ALJ noted "plaintiff's conservative treatment through physical therapy" in support of his rejection of plaintiff's shoulder pain. Tr. 20 (citing Tr. 825–79). However, other than generally citing an entire medical exhibit, neither the ALJ nor the Commissioner direct the Court to evidence that plaintiff responded favorably to her physical therapy. *See Brown-Hunter v.*

*Colvin*, 806 F.3d 487, 494 (9th Cir. 2015. Moreover, the record reflects that plaintiff's responses to conservative treatment were unsuccessful. *See* Tr. 746 (reporting that plaintiff had "tried and failed to respond to conservative measures including formal [physical therapy] which did not help, anti-inflammatory medication, activity modification and rest"). Accordingly, this was not a clear and convincing reason to reject plaintiff's reports of shoulder pain.

### 3. Response to Medication

Among the factors an ALJ may consider when evaluating a claimant's subjective symptom testimony is the effectiveness of medication. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (instructing adjudicators to consider, *inter alia*, the "type, dosage, effectiveness, and side effects" an individual takes to alleviate pain or other symptoms); *see also* SSR 16-3p, *available at* 2017 WL 5180304 at *8 (instructing the same). Indeed, "[i]mpairments that can be controlled effectively with medication are not disabling" for purposes of determining eligibility for disability benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ noted that plaintiff "reported to her medical provider that her nerve and shoulder pain were significantly helped with Gabapentin." Tr. 20 (citing Tr. 494). Plaintiff takes issue with ALJ's characterization of the treatment note and argues that "[s]he did not report 'significant' help with her shoulder pain and the extent of the help with her shoulder pain is unknown." Pl.'s Op. Br 12. A review of the treatment note reveals that the doctor wrote that plaintiff reported that Gabapentin had "significantly helped her nerve pain and *even her shoulder pain*[.]" Tr. 494 (emphasis added).

A single treatment note is insufficient to demonstrate plaintiff's shoulder pain was effectively controlled with medication. *See Michael W. v. Berryhill*, No. 6:18-cv-00004-SI, 2019 WL 2914097, at *8 (D. Or. July 8, 2019) (rejecting ALJ's reliance on a "single treatment note" to

conclude the claimant's symptoms were generally controlled); *see also Ronald J. v. Comm'r, Soc. Sec. Admin.*, No. 3:17-cv-01508-SU, 2018 WL 5924499, at *5 (D. Or. Nov. 13, 2018) ("A citation to an isolated treatment note is akin to an ALJ impermissibly selecting isolated evidence to support the conclusion a claimant is not disabled.") (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)).

Indeed, at an appointment less than two weeks later, plaintiff again reported constant mild-to-severe shoulder pain, which was corroborated by imaging studies, and was ultimately again referred physical therapy in an attempt to resolve her shoulder pain. Tr. 740, 746; *see also* Tr. 762 (MRI assessing "[i]rregular tear along the base of the superior labrum" and "[m]ild to moderate [acromioclavicular] joint hypertrophic changes"). As such, plaintiff's response to medication was not a clear and convincing reason to reject her reports of shoulder pain.

### 4. Objective Medical Evidence

Although an ALJ may consider consistency with objective medical evidence in assessing a claimant's subjective symptom testimony, *see* 20 C.F.R. §§ 404.1529(c), 416.929(c), he may not reject subjective symptom testimony "because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ cited three objective test results in rejecting plaintiff's reports of shoulder pain, none of which were inconsistent with plaintiff's testimony. First, the ALJ cited a March 2015 x-ray of plaintiff's right knee, which is not relevant to plaintiff's complaints of shoulder pain. Tr. 20 (citing Tr. 526). The remaining two records—a June 2016 x-ray that showed "[e]arly degeneration of the acromioclavicular joint," Tr. 532, and a November 2016 ultrasound that showed a "full-thickness supraspinatus tendon tear," Tr. 539—are fully consistent with plaintiff's testimony she has shoulder pain and difficulty reaching. Tr. 91. Moreover, the ALJ's decision is silent as to a

March 2017 MRI that showed plaintiff had a torn labrum. Tr. 762. The objective medical evidence was therefore not a clear and convincing reason to reject plaintiff's testimony relating to her shoulder pain.

**B.     Knee Pain**

The ALJ rejected plaintiff's reports of knee pain relying on (1) purported conservative treatment; (2) the treatment record; and (3) the objective medical evidence.

As a preliminary matter, as plaintiff' correctly notes, the ALJ's decision erroneously refers to plaintiff's knee pain as "status post right knee surgery." *See* Tr. 20–21. However, the record reflects that although plaintiff had a "complete ACL tear" in March 2008, she never had surgery to repair the ligament. Tr. 594; *see also* Tr. 1139 ("She also had an ACL tear but was told by orthopedic surgery that she was not a candidate for surgery.").

1.     <u>Conservative Treatment</u>

As noted, a claimant's favorable response to conservative treatment, including physical therapy, can undermine reports of disabling symptoms. *See Tommasetti*, 533 F.3d at 1040. Here, however, as with plaintiff's reports of shoulder pain, the ALJ failed to supply any evidence that plaintiff responded favorably to her physical therapy. In fact, the record reflects the opposite conclusion: plaintiff's attempts at physical therapy were not successful in alleviating her knee pain and that surgery was not recommended. *See* Tr. 593 (noting that plaintiff had "tried and failed to respond to conservative measures including use of a cane, activity modification, rest/ice, anti-inflammatory medications and dedicated" physical therapy); Tr. 594 (noting that surgery was not recommended). Courts in this district have explained that a claimant "cannot be faulted for not pursuing surgical intervention where surgery [is] not recommended." *Harrison v. Astrue*, No. 3:11-cv-365-MA, 2012 WL 527419, at *7 (D. Or. Feb. 16, 2012) (citing *Fair*, 885 F.2d at 604). As

such, this was not a clear and convincing reason to reject plaintiff's testimony relating to knee pain.

### 2. Treatment Records

Inconsistencies between a claimant's testimony and the medical record can form a basis to reject testimony. *See Connett*, 340 F.3d at 874.

The ALJ cited two treatment records in which plaintiff "had either a full passive range of motion and a limited active range of motion and a limited active range of motion or a full range of motion with pain on flexion." Tr. 21 (citing Tr. 365, 467). Significantly, the ALJ failed to explain how plaintiff's presentation of a less than full range of motion was in any way inconsistent with her testimony regarding knee pain and the Court declines to supply reasoning for the ALJ. *See Yarnal v. Berryhill*, 2019 WL 1386555, at *20 (N.D. Cal. Mar. 27, 2019) (rejecting ALJ's reliance on the claimant's "range of motion [and] flexion and extension" because the ALJ did "not explain why these findings [were] inconsistent with [the claimant's] testimony about the severity of her knee pain or the associated limitations"); *see also Torres v. Colvin*, 2014 WL 5810365, at *2 (C.D. Cal. Nov. 7, 2014) (rejecting ALJ's reliance on full range of motion to discount pain testimony).

Moreover, reviewed in context, both treatment notes are consistent with plaintiff's testimony that she has pain in her right knee. *See* Tr. 365 (noting that plaintiff's right knee was "tender to palpitation," assessing "[a]rthralgia of the right knee," and again referring plaintiff to physical therapy for her pain); Tr. 467–68 (reporting "8/10 pain on right knee," and assessing upon physical exam that plaintiff's gait was impaired "with [a] limp favoring [the] right knee"); *see also* Tr. 1140 ("right knee with more guarding and obvious swelling"). As such, these treatment records were not clear and convincing reasons to reject plaintiff's testimony relating to her right knee.

### 3. Objective Medical Evidence

As noted, an ALJ may consider the consistency of objective medical evidence in assessing a claimant's subjective symptom testimony, but he may not entirely reject the testimony "because it is not substantiated affirmatively by objective medical evidence." *See Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the ALJ rejected plaintiff's testimony of knee pain based on "[a]n x-ray of the knee [that] revealed no abnormalities." Tr. 21 (citing Tr. 1171). A review of the x-ray, however, reveals that plaintiff had "[m]ild degenerative changes" in her right knee. Tr. 1171. Moreover, because the ALJ failed to supply any additional rationales to reject plaintiff's testimony, a lack of objective evidence in the record could not suffice as a clear and convincing reason to reject plaintiff's testimony. *See also Rollins*, 261 F.3d at 857 (explaining that "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence"); *see also Amaro v. Colvin*, 613 F. App'x 615, 617 (9th Cir. 2015) (reversing credibility determination and noting that "[i]n discrediting [the claimant's] testimony regarding the severity of his symptoms because . . . X-rays showed 'mild' erosions and synovitis, the ALJ essentially required [the claimant] to provide objective medical evidence of the pain or fatigue itself, or the severity thereof.") (citing *Garrison v. Colvin,* 759 F.3d 995, 1014 (9th Cir. 2014) (quotation marks omitted)).

In sum, the ALJ did not provide clear and convincing reasons for discrediting plaintiff's subjective symptom testimony relating to her shoulder and knee pain. The ALJ's assessment of plaintiff's subjective symptom testimony is reversed.

## II. Lay Witness Testimony

Plaintiff alleges that the ALJ improperly rejected the lay witness testimony of her partner, Rick G. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r,* 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)). Further, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless error. *Molina*, 674 F.3d at 1121–22.

Rick G. testified at the hearing regarding plaintiff's limitations. Tr. 95–102. He explained that he assisted plaintiff with taking showers, cooking, and housecleaning on a daily basis. Tr. 97. He explained that plaintiff tired easily, had to sit often, and that her strength had diminished. *Id*. He estimated that she could lift ten pounds "not very often" and that she was only capable of being on her feet for short periods with rest. Tr. 100–01.

The ALJ briefly discussed Rick. G.'s testimony, but neglected to assign the testimony any weight. Tr. 20. The Commissioner essentially argues that the Court can infer the ALJ gave germane reasons for rejecting the lay testimony because Rick G.'s testimony was similar to plaintiff's, which the ALJ rejected. Def.'s Br. 10–12 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (explaining that where an ALJ provides clear and convincing reasons for rejecting a claimant's testimony, where the lay testimony is "similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay] testimony")). However, as discussed

previously, the ALJ failed to supply clear and convincing reasons for rejecting plaintiff's testimony. As such, the ALJ erred in failing to assign any weight to the lay testimony and the error was not harmless.

The ALJ is reversed as to this issue.

### III. RFC Formulation

The RFC is the most a person can do despite her physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC assessment must be "based on all of the relevant medical and other evidence," including the claimant's testimony as well as that of lay witnesses. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Put differently, the "RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, *including the individual's complaints of pain and other symptoms*." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (emphasis in original) (bracketing and quotation marks omitted) (citing SSR 96-8p, *available at* 1996 WL 374184).

Plaintiff asserts that the ALJ's RFC formulation failed to include limitations that were supported by substantial evidence in the record. Specifically, plaintiff argues, the RFC (1) should have accounted for her use of assistive device for walking and (2) should have included more restrictive manipulative limitations relating to her ability to handle and finger bilaterally as well as her ability to lift and carry. Pl.'s Op. Br. 6–9. The Court agrees.

Plaintiff testified, and the record confirms, she required an assistive device to walk. Tr. 48–50, 64, 67; *see also* Tr. 465 (prescribing cane for daily use for stability); Tr. 660 (observing that plaintiff "ambulat[ed] with a single-point cane" and "3-point gait" and encouraging her "to use the cane for stability"); Tr. 669 (reporting plaintiff used "a cane and walker"); Tr. 946 ("walk[s] with walker due to pain"). She explained that on "good days," which occurred approximately twice per

week, she used a cane but otherwise used her walker. Tr. 80–81. Plaintiff also testified that her "tremors" make "opening a simple bottle of water" difficult. Tr. 87; *see also* Tr. 477–78 (assessing an "[i]ntention tremor"); Tr. 689 (describing "significant tremors"). Finally, plaintiff testified she has difficulty "hold[ing] or carry[ing] anything" and that she drops things. Tr. 93; *see also* Tr. 100 (lay witness testifying she could lift "[t]en pounds and not very often").

The ALJ failed to supply legally sufficient reasons for rejecting plaintiff's subjective symptom testimony and the lay witness testimony. The limitations described in such testimony were required to be included in plaintiff's RFC. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[T]he ALJ failed to provide clear and convincing reasons for finding [the claimant's] alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of [the claimant's] RFC."). As such, the ALJ's RFC assessment failed to account for all of the relevant evidence in the record and the ALJ's corresponding step four determination was not supported by substantial evidence.

The ALJ's RFC formulation must therefore be reversed and this case must be remanded.

## **IV.** **Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176–78 (9th Cir. 2000). The court first determines whether the ALJ committed legal error; and if so, the court must review the record and decide whether it is "fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal citation omitted). Second, the court considers whether further administrative proceedings would serve a "useful purpose." *Id*. at 407 (internal citation omitted). Third, if the court finds the record is fully developed and further administrative proceedings would not be

useful, the court may credit the improperly discredited evidence as true and determine whether the ALJ would find the claimant disabled in light of this evidence. *Id.* (internal citation omitted). If so, the court may remand the case for an award of benefits, although the court ultimately retains "discretion in determining the appropriate remedy." *Id*. at 407–08 (internal citation omitted).

Here, the Court concludes the ALJ committed legal error in failing to provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony as well as the lay testimony. The Court finds, however, that the record is ambiguous and that remanding for further proceedings would serve a useful purpose. Specifically, as noted by the ALJ, the record does not contain a medical source statement from any of plaintiff's treating providers. Tr. 21. In fact, no physician who actually examined or treated plaintiff opined as to her specific functional limitations. The Court finds the record would benefit from a consultative examination to assess the extent plaintiff's physical limitations impact her ability to work.

Accordingly, the Court remands this case on an open record to: (1) obtain an a consultative examination; (2) conduct a *de novo* review of the medical opinion evidence in light of the consultative examiner's opinion; (3) reassess plaintiff's subjective symptom and lay testimony; and (4) conduct any further necessary proceedings.

## CONCLUSION

For the reasons discussed above, pursuant to 42 U.S.C. § 405(g), Sentence Four, the decision of the Commissioner is REVERSED and this case is REMANDED for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

DATED this 18th day of December, 2019.

/s/ Patricia Sullivan

PATRICIA SULLIVAN
United States Magistrate Judge